Johnson, C J. This is an application to this Court for a Writ of Mandamus to the Circuit Qpurt of Pulaski county, to compel that Court to appoint commissioners to lay ofi* dower, and to do such other acts as are directed by a decree rendered against William E. Woodruff on the 15th day of April,, 1839, and in favor of the complainant. At the September term of the same year, Woodruff, the defendant in the Coui;t below, filed his petition to have said decree set aside and for a re-hearing, which, upon consideration, was refused. At the March term, A.D. 1840, Woodruff filed his second petition for a re-hearing, alleging error in the decree and also setting up new matter as having been discovered since its rendition. This petition was sustained, and the Court, on the 29th of November, 1841, made a formal order setting aside the decree of the 15th of April, 1839, and granting a re-hearing of the cause. On the 31st of December, A.D. 1841, the defendant, Woodruff, filed his amended answer, to which the complainant, on.the 29th of June, A.D-. 1843, entered her replication in short by consent. The cause was again submitted on the 17th of January, 1846, and, on the 2d of June following, a decree was pronounced wholly denying the prayer of the complainant, and dismissing her bill. The contest between the parties, and which we are now called upon to decide, is, whether the decree of the 15th oí April, 1839, or that of the 2d of June, 1846, is to.be recognized as the final decree in the cause. If the first decree was final and conclusive between the parties, it is clear that the order setting it aside at a subsequent term upon mere petition is illegal and void, and that therefore the Circuit Court should have appointed new commissioners for the purpose of carrying out and effectuating the objects of the decree. . The substance of the first decree is, that the complainant have dower in the lots described in the bill consisting of one-third part thereof for and during her natural life, and that the defendant, Woodruff, pay to her the sum of six hundred and sixty-six dollars, the one-third part of the rents, issues, and profits, of said lots, which had accrued since the death of her husband to the time of rendering the decree, that Benjamin Johnson, Nicholas Peay,. and Peter T. Crutchfield, be, and they were thereby, appointed commissioners to proceed to the premises, and, by actual survey and admeasurement, to lay off and ascertain the boundary line of such dower in said lots and buildings thereon, and to take an account of the rents, issues, and profits accruing to the said Woodruff from said lots from that time until the next term of that Court, and also to add one-third thereof to the sum already decreed to be paid, and that such, commissioners make return of their proceedings at the next term of the Court, to which term the cause was continued. The question here presented is, whether this is a mere interlocutory or a final decree, A final decree is one which makes an end of the case, and decides the whole matter in controversy, costs and all, leaving nothing further for the Court to do. If the decree which was rendered on the 15th of April, 1839, he tested by this rule, it would seem difficult tp conceive how it can be regarded as a final decree. It did not profess to be final, nor could it have been so considered by the chancellor. It did no more than to decide the abstract question of dower in favor of the complainant and to appoint commissioners to proceed to the premises and to lay off the dower, with instructions to report to the next term of the Court, It is true that the chancellor did ascertain the amount of the rents and profits that had theretofore accrued and decreed the payment of it tffthe complainant, yet he also required the commissioners to take an account of the intermediate rents and profits which might accrue from the date of the rendition of the decree until thft next succeeding term of the Circuit Court, and also to add one-third of that sum to the amount already decreed to be paid, and further that such commissioners shall report their proceedings to the next term of the Court, to which term the cause was regularly continued. The commissioners, then, were not only required to admeasure and lay off the dower in the lots described in the bill, but they were also required to state an account' and report the result of their labors to the next term of the Court. It is perfectly certain that the decree is not final in its terms, but strictly and technically interlocutory. “ A decree never can be said to be final where it is impossible for the party in whose favor the decision is made ever to obtain any benefit therefrom without again settintg the cause down for hearing before the Court, upon the equity reserved, upon the coming in and confirmation of the report of the master, to whom it is referred to ascertain certain facts, which are absolutely necessary to be ascertained before the case is finally disposed of by the Court; or which the chancellor thinks proper to have ascertained before he grants any relief whatever to the complainant. But if the decree not only settles the rights of .the parties, but gives all the consequential directions which will be necessary to a final disposition of the cause, upon the mere confirmation of the report of the master by a common order in the register’s office, it is a final decree, and may be enrolled at the expiration of thirty days, although the amount to which the complainant may be entitled under such decree is still to be ascertained upon a reference to a master for that purpose. Thus, in the ordinary case of a bill for the foreclosure of a mortgage, if the decree merely decides or declares the rights of the complainant by virtue of his bond and mortgage, and refers it to a master to comp ute and ascertain the amount due to him, reserving all further questions and directions until the coming in and confirmation of the master’s report, it is an interlocutory report merely, as the complainant cannot obtain the benefit of his suit until he brings the cause on to be heard again upon the equity reserved and for further directions as to a sale of the mortgaged premises, and the payment of his debt and costs out of the proceeds of such sale. But if the decree, in addition to the reference to the master to compute the amount due upon the bond and mortgage, proceeds further and gives the usual directions in such cases, that upon the coming in and confirmation of the report of the master the premises shall be sold, and that the master who makes such sale shall pay the amount so reported due, together with the interests and costs, out of the proceeds of such sale, and directing the mortgager to pay the deficiency reputed due upon such sale, the decree is final, although the mortgager may have the right to except to the master’s report of the amount due. For, the questions arising upon the exception to the master’s report in such a case, are merely incidental to the carrying of the final decree in the cause into full effect.” 9 Paige Ch. R. p. 638, 639. Can it be said that the party, in whose favor the original decree in this cause was made, can obtain any benefit from it without again setting the cause down for hearing before the Court upon the equity reserved, upon the coming in and confirmation of the report of the commissioners ? I think it clear that such a position, if taken, cannot be sustained. The decree utterly fails to give the necessary directions which would authorize its enforcement upon the coming in and confirmation of the report. It simply settles the right to dower, and appoints commissioners to ascertain its limits and amount, and to report the result of their proceedings to the next succeeding term of the Court. It contains no order upon the defendant either h/deliver possession of the realty or to pay the amount which should be found due for the rents and issues of the land upon the coming in and confirmation of the commissioner’s report. The counsel for the petitioner has referred us to the case of Menefee's ad. vs. Menefee et al., (3 Eng. R.,) and it is upon that case that he mainly relies for a favorable decision in this. I have scanned the decree in that case critically, and the result of my examination is, that it will not stand the test of the rule laid down by the authorities. The rule upon the subject is uniform and inflexible that the decree, to be final, must either be full and complete in itself and ready for immediate execution, or it must contain all the consequential directions which would be necessary to its enforcement upon the coming in and confirmation of the report. It is with great reluctance, at all times, that I would overrule one of my own decisions; yet I conceive it to be our imperative and indispensable duty to do so, whenever, upon á more thorough investigation and more mature reflection, it becomes manifest that such decision is not in accordance with the great and fundamental principles of the law. In the ease referred to, the decree did not ascertain and describe by metes and bounds the particular portion of land, nor did it designate the identical negroes of which the widow should be endowed, nor did it contain directions as'to what should be done upon the ascertainment of such facts and the confirmation of the report of the commissioners. In respect to this matter, both decrees are essentially alike. It will not be denied but that the question whether the report of the commissioners appointed by the decree in this case, should be confirmed or rejected, would be merely collateral to those involved in the decree itself, and that, consequently, the decision of the one would not be, in the slightest degree, affected by the other: yet this circumstance could not dispense with the necessity of a final order or decree directing and pointing out the peculiar mode of carrying the whole into full and complete effect. The original decree rendered in this cause is utterly inadequate to effect the purposes of a final decree. It neither informs the defendant what he has to do, nor does it arm the complainant with the power to compel him to do any thing: and, what is still worse, it gives no directions as to what shall be done upon the coming in and confirmation of the report. The chancellor of the State of New York, in the case of Coithe vs. Crane, (1 Barbour Rep.,) said : “ The decree in question is undoubtedly a decree directing the payment of money, although the amount to be paid is not ascertained in the decree itself. It is also a final decree, as it disposes of the question of costs, and gives all the consequential directions upon the coming in and confirmation of the master’s report by the usual order in the clerk’s office;” and then refers to the case of Mills vs. Hoag, (7 Paige Rep. 18.) The decree in this case is not only not final, but it is a matter of much doubt whether it could have been so considered in case the Circuit Court had proceeded to make all the consequential directions in anticipation of the commissioner’s report. It did not follow necessarily that the commissioners would find a decision practicable, and if so, they would have been required to report that fact, and the moment such report should have been made, their authority would have ceased, and could have been revived only by another order directing them to ascertain the annual profits, and a further order upon the defendant to pay them over to the complainant when they should fall due. This view of the decree in question would alone determine its true character. For, in the event that the specific property should not be susceptible oí a division, that being the extent to which the commissioners were authorized to go, it is clear that the decree could not reach the real estate, and that consequently the widow could not derive any benefit from it. The commissioners were not appointed to execute the decree, but merely to ascertain certain facts which were necessary to be known to the Court before a final decree could be made. They were only authorized to proceed to the premises, and, by actual survey and admeasurement, to lay off and ascertain the boundary line of the complainant’s dower in the lots described in her bill and the buildings thereon, and also to take an account of the rents, issues and profits that might arise therefrom until the next term of the Court, and to add one-third thereof to the sum specified in the decree to be paid, and to make a full report of their proceedings to the next term of the Court. Can such a decree be said to make an end of the case, and to decide the whole matter in dispute ? The chancellor wanted the materials for a final decree. lie took the steps necessary to procure them. Until they wore furnished, he could do no more than make the interlocutory order which he did. He arrived at principles upon which a final decree could be rendered, but he was not yet in possession of the facts necessary to enable him to make it. He was of opinion that the complainant was entitled to dower in the lands and improvements and also in the rents and profits which had accrued from the time of the death of her husband. But, inasmuch as the one-third part of the described lots was not ascertained and designated by metes and bounds, and indeed could not be, without the aid and intervention of commissioners, or some other description of agents, it became absolutely necessary to make such appointment, and to wait for their report, as the only means which would enable the Court to make a final decree. I have carefully examined all the cases cited by the counsel for the petitioner, and none of them, in my opinion, do sustain the argument that this is a final decree. In the case of Harvey et ux. vs. Bronson, (1 Leigh 118,) a commissioner had been appointed to sell the land to complainants, who was to report to the Court, &e. The rights of all the parties, however, were fully and finally settled, and costs decreed. The appointment of the commissioner was merely to execute the decree, precisely as in the case of a sale under a decree to foreclose a mortgage. But that is very different from the present case, where the commissioners were appointed to enable the Court to obtain possession of the whole case. This was, then, unquestionably, an interlocutory decree, and, consequently, open to a re-examination by a petition for that purpose. In the case of Colk vs. Stribling, (1 Bibb 124,) the Court of Appeals of Kentucky lay it down as a well established rule that a Court of Chancery has a right to alter an interlocutory decree at any time before a final decision therein, and without being requested by cither party. This opinion is confirmed by Chief Justice Marshall, in the case of Field vs. Holland, who abserves, a Court of Equity may ascertain facts themselves if the evidence enable them to do so, or may refer the question to a jury, or to auditors, and that, after an issue ordered, the Court may proceed to a final .decision without trying the issue ,or even setting aside the order. This, I conceive to be the settled law upon the subject of final decrees, yet it can have ■no effect upon the decision of this cause, as the decree under consideration is not of that character. I am, therefore, of opinion that the Circuit Court had the undoubted right to set the original decree aside, and, having done so, in the exercise of its sound discretion, it ought not now to be compelled to appoint commissioners to carry out its provisions. The application should, therefore, in my opinion, be denied. Scott, J. The question involved in this application, whether or not the decree pronounced at the April term, 1839, was final or interlocutory in direct reference to our statute regulating appeals in chancery, having been contested with the utmost severity, the labor of counsel has thrown upon it a flood of light. And, being sensible that were I to enter upon a critical examination of the various authorities cited and elucidated by the counsel, and attempt to show, in every aspect, their relative bearing upon the point in issue, I should be allured far beyond the.bounds ordinarily allotted to a judicial opinion. I shall, therefore, almost of necessity, leave to the briefs to present the foundation and elements of my views, and proceed at once to the question before me, with the single general remark, as to the. authorities cited, that I have found among them a remarkable harmony and very little actual conflict. ' I shall first examine the point in issue in reference to principle, and then make a brief reference to a few of the authorities. There is no distinction in law more clearly defined and better understood, at least in the broad outline, than that between interlocutory and final judgments. And upon the same basis, in principle, rests the distinction in chancery between interlocutory and final decrees. And upon a question of jurisdiction, we may, with as much propriety, depart from the plain letter of the act of the Legislature relative to judgments as to decrees, as the same words of the act are equally applicable to both. All decrees are either interlocutory or final — there is no middle .class, — and the same may be said of orders in chancery. And although it may not be difficult to give a definition of each that might be an unerring criterion for numerous decrees, yet so infinite are the matters of equity cognizance, and in such complicated aspect are they so often presented, that it would be difficult indeed, if not altogether impossible, to present one sufficiently comprehensive to embrace every case. It is, therefore, that some of the definitions found in the books (and indeed this may be broadly said of each of them separately) fall very far short of presenting clearly to the mind any rule for the determination of cases that often arise. Hence so many cases are found in the hooks, where the question has evidently been decided upon the particular circumstances of the whole case with only a general reference to such definition and a more particular reference to the subject matter and the end in view by the proceedings. And, upon a thorough analysis of the cases, the distinction will be found to rest, for the most part, upon a substantial foundation of strong analogy to that upon which the distinction between interlocutory and final judgments at law is based. Nor is this at all remarkable when it is remembered that, although courts of law track more closely, in their proceedings, known and fixed rules of law, than courts of equity do, yet those very fixed rules are but for the production of the identical same results, and tend to the same end that the more flexible rules of the equity courts áre designed to achieve. In both courts, the first object is to enable the Court to come at the whole case — to this end all judgments and orders are purely interlocutory. The next object is to pass upon the cause thus fully presented, and upon the doing of this the judgment or decree is final. Then the third object is to execute the judgment or decree, and, in the doing of this, orders may be refused to forward, retard, or terminate the execution: and these again will be either interlocutory or final according to their legal effect. And, from such as may be final, an appeal in chancery will lie under our statute. Such appeal, however, having no effect to bring up or open the decree; but it touches simply the execution of the decree, in the identical same sense that the quashal or supersedeas of a fi. fa. will affect only the process and not the judgment itself. These are elementary principles that all understand; but they are not the less to be kept in view; nor can the strong analogies between judgments and decrees be safely lost sight of in considering a question like that at thebar. And especially should not this be done, when the subject matter is one of legal cognizance, the jurisdiction of which has been assumed, concurrently, by the chancellor, upon the sole ground that he can somewhat more completely fit the remedy to the exigencies or equities of the parties or to their agreement in the premises, — not in adjudging what are their legal rights, but in the special and particnlar matter of the assignment and actual admeasurement of dower: that in these matters he can, in some degree, mitigate the stern visage and rigid features of law. But expressly avowing, at the same time, that the legal rights of the parties in matters of dower, as well as in matters of partition, are to be determined in equity by the identical same rules that determined them in the courts of law. Agar vs. Fairfax, 17 Ves. 351. Parker vs. Gerrard, Ambler 236. Furner vs. Morgan, 8 Ves. 143, Wiseley vs. Findlay, 3 Randolph 361. Nor will it be totally profitless to take a rapid glance at the common law remedies for Dower and Partition, there being a close and strong analogy between them, and their jurisdiction in equity having been assumed upon the identical same ground. Originally the common law afforded the widow, for the recovery of her dower, two writs adapted to the injuries she might have sustained. The one, the “ Writ of right of Dower,” and the other the Writ of Dower unde nihil hahet. The first enabled her to recover of the alienee of her husband where only a part of the land had been aliened and she had recovered her dower in the residue. When that was the case, she could not sue out the i(unde nihil habetf because she could not truly allege that she had recovered nothing, and in such case she was compelled to resort to the “Writ of right of Dower,” which extended either to the part or the whole. But afterwards, by statute W, ch. 49, to remedy this inconvenience, it was provided that it should be no plea in abatement to say that she had received part of her dower of any other person before writ purchased, and thus both writs were made equally available to her in most cases against the alienee: and the statute of Merton, ch. 1, enabled her to recover damages for the detention of her dower. After this, the final judgment of the Court was that she recover her damages and also the lands that had been previously admeasured to her for which she had execution as to the land (so by metes and bounds adjudged to her) by Habere facias seizmam. Bac. Abr., “Dower” (I.) So, also, the writ of Partition originally lay only for Parce-ners, and the reason ghren was, that, as the tenantcy in copar-ceny was created by law, it was reasonable that the law should give the tenants partition. But, as joint tenants and tenants in common became such by their own act, the law provided no means by which they could obtain a separate interest in that which had become joint and undivided by their own consent. (Coke Litt. (Tho. Ed.) 7 vol. p. 806, top.) But the writ was after-wards extended to them by st. 31st and 32d Hen. 8, and the latter statute extended it to the joint owner of a lease for years. Ib. note (N.) In all proceedings on these writs in the common law courts, there were two judgments : the one interlocutory and the other final. The first, in a proceeding on a writ of Partition, was a judgment, upon the legal rights of the parties, that partition be made. Upon this, “partition was made by the oath of twelve men and assignment and allotment thereof,” and, upon being so-returned by the sheriff, the penal judgment cpiod partitio precedida firma et stabiles imperpetuam tcneaiur was rendered, and, until this was done, no writ of error lay. Ib. p. 808, top. Such, then, were the common law remedy and the common law mode of proceeding. But although the courts of equity assumed concurrent jurisdiction of both classes of cases upon the same ground, and admitted that it Avas a jurisdiction that was not discretionary but ex debito justifies, (Wisely vs. Finlay, 3 Randolph 361,) and, bound by the principles that govern like cases at law, they were not bound to adopt, nor did they adopt, the common law course of proceeding, but, on the contrary, proceeded in their own mode. Consequently the mode of proceeding in the common laws courts can throw no other light upon the question at bar than as presenting the measure of the development of the facts of such cases that those courts required before a final judgment was allowed, thereby showing what the common Iatv courts considered to be the merits of such cases. Upon which merits the judicial discretion of the Court was passed. Now, I apprehend that there can be no good reason why the chancellor should be allowed to make a final decree Avithout first exercising his judicial discretion upon the whole merits of any case; on the contrary, if there be any difference between him and the common law judge, as to this, it will consist in making it incumbent upon the chancellor to look more closely and thoroughly into the whole merits, especially in cases like this at bar, where he assumes jurisdiction not only upon the ground that he can administer the law and pass upon the legal rights of the parties as well as the common law judge can, but, in addition to this, that he can do more ample and complete justice between the parties by mitigating,in an adjustment upon equitable principles, any hardship that may grow up and be developed in the matter of the actual admeasurement and setting apart of the dower assigned. Doubtless, however, the only true difference as to this consists in the different general process in which they administer justice : that of the common law judge, being fixed and definite and not admitting of prospective adjudication beyond an order nisi, predicated on something already before him, his final judgment can be pronounced only on that which is actually and in fact before him; while that of the chancellor, being more flexible, his final decree may not only be pronounced on that which is in fact before him, but also, at the same time, upon other matters connected therewith, that are within his reach and susceptible of such judicial direction as to the mode of doing the things to be done; and by settling the principles on which they are to be done in a manner so accurate and certain, that the acts to be done in pursuance of such direction are thereby but ministerial acts, and thereby the party is refused or decreed the remedy sought on the whole case. And thus, by passing judicially upon that which, is actually before him, and at the same time prospectively as to that connected therewith by means of those further directions, he passes judicially upon the whole merits of the case, as fully as the common law judge does after waiting for the coming in of the facts not at first before him. But I apprehend that if the chancellor does not in fact pass judicially upon the whole merits of the case in one of the two modes indicated, and refuse or allow the remedy sought, his decree will not be a final one unless he puts an end to the case and turns the parties aut of Court. And this seems fairly in-ferrible from the rule as to final decrees laid down in Harrison’s Chancery Practice, to wit: “ A decree is final when all the circumstances and facts material and necessary to a complete explanation of the matters in litigation are brought before the Court, and so fully and clearly ascertained by the pleadings on both sides that the Court is enabled from them to collect the respective merits of the parties litigant, and upon full consideration of the case made out and relied upon by each determine between them according to equity and good conscienceAnd also deducible from the rule .laid down by the Court of Appeals of Virginia, in the case of Alexander’s heirs vs. Coleman & wife, (6 Munf. R. 328,) upon a question of jurisdiction under a statute like ours, where that Court reviews ’all their various decisions on the point, and it is there said by Judge Cabell : “I have examined, with great attention, every case in this Court on the subject of interlocutory decrees, from that of Young vs. S/cipwith, (2 Wash. 300,) to the present time. They are all so well recol-ted, that I deem it unnecessary to enumerate them or to detail their circumstances. They were all, without exception, decided on the same general principle, that every decree which leaves any thing to be done in the cause by the Court is interlocutory as between the parties remaining in Court.” Now I propose to examine the decree before me to see if it be final in view of these principles and rules. The remedy the petitioner sought was the possession of a several estate for life to the extent of one-third of the whole, to be carved out of the entire estate held in fee by the defendant, and to recover one-third of the back rents and profits, since the death of her husband; and it was “ decreed that dower in said lots, consisting of one-third part thereof, be assigned to the said petitioner for and during her natural life, and that the said defendant pay to the said petitioner the sum of six hundred and sixty-six dollars, the one-third part of the rents, issues and profits of said lots, which, by the proofs in this cause, have accrued since the death of the said Robert Crittenden to this time, and that Benjamin Johnson, Nicholas Peay, and Peter T. Crutchfield be, and they are hereby, appointed commissioners to proceed to the premises, and, by actual survey and admeasurement, to lay off and ascertain the boundary line of such, dower in said lots and buildings thereon, and to take an account of the rents, issues and profits accruing to the said defendant from said lots from this time until the next term of this Court, and add one-third thereof to the sum above decreed to be paid, and that said commissioners make return of their' proceedings to the next term of this Court, to which term this cause is continued.” In the first place, it may be remedied that this is not a case where, by the terms of the decree, the cause is ended, and the parties dismissed from the Court, and its finality could be urged upon that ground irrespective of its completeness or correctness, but a case where its character has to be determined from what has actually been passed upon and decreed, although the cause and the parties are, by the terms of the decree, expressly continued in Court until the succeeding term. "What, then,has been passed upon and decreed ? Certainly nothing but a part of the legal rights of the parties — not the whole of them, — and none of the equities, if there be any in the case. Besides the legal rights declared by the decree, that is to say, that the petitioner had a right to,dower in gross in the lots, that that dower be assigned to her by actual survey and admeasurement : that its quantity was a life estate in one-third part of all the lots, she had a further legal right that was not passed or decreed to recover in severalty the specific dower, so declared to be her right and so directed to be laid off by metes and bounds. Until this was done, all her legal rights had not been passed upon. This recovery for the specific dower after the same should have been admeasured and set apart by metes and bounds was the final judgment at law, and was enforced by the writ of Habere fac. seisinam, and until there was a judgment for this, or it was refused, the remedy sought was neither refused or recovered. None of the equities of the parties have been passed upon in any way because the case had not progressed far enough to develope them, nor does the decree by further directions pass upon them in anticipation. But it is possible that the real estate was susceptible of the admeasurement and setting apart of the specific dower without resulting in any hardships .touching such setting apart in seve-ralty by metes and bounds of the dower, and therefore there would be none for the chancellor to mitigate and no equities to adjust. True, that may be so, the pleading and evidence presenting that point indefinitely, but when the parties leave the law forum and come into equity, the presumption is that such hardships will arise, and tlnjt there will be such equities to adjust. And if the contrary presumption be indulged, and the decree be held as final until and unless these hardships arise and these equities be developed in the progress of what would, in that case, be considered but the execution of the decree; and that then they could be adjusted by a further decree, then one of two things must be the inevitable result, that is to say, that the first decree would be in interlocutory only, by reason of its being in its essence a decree, nisi, that would need confirmation to make it final, (Aldridge & Claiborne vs. Giles et al., 3 Hen. & Munf. 136,) or else there would be two separate final decrees in the cause from each of which an appeal would lay, which, I apprehend, could not be maintained in our system. The one final decree would be upon a part of the legal rights of the parties, and the other would be upon the remainder of those legal rights and all the equities between the parties. I have said that all the legal rights of the petitioner have not been passed upon, and that her right to recover the specific dower, after its allotment, has not been decreed, either in terms or by further directions. This, I lay down from the face of the decree itself. If the contrary can be maintained at all, it can only be maintained upon the ground of intendment: that is to say, that when the chancellor decreed her right of dower in the lots, fixed its extent, and that it be assigned to her, and that commissioners be appointed to admeasure and ascertain its' lines by actual survey, it must be intended that he also decreed that she should recover and possess it as soon as ascertained and set apart. Now, in the first place, the face of the decree is wholly inconsistent with such an intendment, in this, that these commissioners were directed, in addition to the actual allotment of dower, to take an account of the rents, issues and profits accruing to Woodruff, from said lots, from that day (not until such survey and admeasurement) until the succeeding term of the Court. The continuance of the cause is also inconsistent with this in-tendment. And the total failure of the chancellor to give further directions beyond a report of the commissioners at the succeeding term, is the strongest sort of negative of such intendment, as it indicates that he had elected the usual course of ascertaining all the merits of the case and developing the equities between the parties, previous to passing judicially upon them (just as the common law judge does in every case) instead of passing upon them in anticipation by giving further directions. Besides, to intend that the chancellor had decreed that the petitioner should recover, possess, and be seized, of her specific dower as soon as it should be ascertained by survey and ad-measurement, and by this intendment hold his decree final in the face of his order directing dower to be admeasured and set apart with directions to report at the next term, in the absence of all further directions, would be, in effect, to take from him the power of doing at all the only thing that he had assumed to do, better than the common law judge, that is, that he could better adjust, upon equitable principles, the setting apart of the actual specific dower assigned. Because, if, by such intendment, such a decree be final, the moment the chancellor decrees that the petitioner has a legal right to dower, to be carved out of the estate in fee, and sends out his commissioners to lay it off, although this very act of his commissionei’s is, in its nature, directly calculated to give him information, on which to base his subsequent final decree, of specific dower in one of several modes, either in the real estate itself, or in the rents and profits to accrue therefrom in future, his hands become instantly tied, and the only object and purpose for which he assumed jurisdiction is at once defeated, as he cannot move any farther than by executing this decree which has been so, against his will, held to be final. Nor is this the only consequence of holding by intendment such decree to be final, and that all else to be done is but the execution of the decree, as it will inevitably follow that if the estate in tee be incapable of specific physical division, so that one actual third part in view of quantity and value can not in severalty be set apart to the widow, and the decree would, in consequence, have be executed by renting out the property and decreeing the rents and profits, this could be done only by the exercise of judicial functions, and thereby there would be a second final decree, technically so, in the same cause. That sort of practice was allowed in England, and, under statutory regulations, is allowed in New York in substance, (3 John. Ch. 66, 68, 123, 163. 15 Ves. 184. 16 Ves. 213, 218. 18 Ves. 453. 9 Ves. 319. 14 Ves. 184. 15 Ves. 585.) And see the argument of M. Wickam in the case of McCall vs. Peachy, 1 Call, Va. Rep. 58, marginal, and Putnam vs. Lewis & wife, 1 Florida Rep. 475; but it cannot be .tolerated in our system, which contemplates but one final decree in any case, from which an appeal can lay, and that must, as I suppose, be that which puts an end to the case giving or refusing the remedy sought. And doubtless it was in reference to that practice that the rule, laid down in Daniel’s Ch., p. 1199, was adopted, “That when the decree does not reserve the consideration of the points of equity arising upon the determination of the legal rights of the parties, it is said to be a final decree,” and it would seem, therefore, not particularly applicable to our practice, and perhaps in no cases applicable except in those where the decree, in terms, either gave or refused the remedy sought, and might, in some sense, be a qualification of the rule I have extracted from Harrison’s Chancery Practice. The decree before me cannot, in my opinion, then, be considered a final one on the ground that it shall be intended that the chancellor decreed that the petitioner should recover and be possessed and seized of the specific dower, as soon as it should foe surveyed and set apart. Nor can the operation of Mr. Daniel’s rule, which I have just cited, make it so, because, as I think, that rule has no application in our system to such a case as this. And, therefore, as no decreee was rendered, either in fact, or, as we have shown, by intendment, that the petitioner recover in severalty the dower directed to be assigned by metes and bounds, or that WoodrufF should render the same to her after such survey and admeasurement, it was clearly an interlocutory decree within the rule laid down by the Virginia Court of Appeals, because this was left “to be done in the cause by the Court” — no decree being final (as was there solemnly held after a review of all the cases) “ where any thing is left to be done in the cause by the Court between the parties remaining in Court.” The decree seems clearly interlocutory also when tried by the rule which I have before cited from Harrison’s Chancery Practice, because of the absence of all the material facts touching the practicability of severing the dower estate in kind from the estate in fee — these facts being not clearly ascertained by the pleadings —and therefore the Court was not enabled to have a full view of the merits of the case and determine between the parties according to equity and good conscience, (also see Jaques vs. Methodist Church, 17 John. 559;) and, for want of these facts, the decree is, as I think, clearly within the counterpart of that rule, as laid down by the same authór, to wit: “ A decree is interlocutory when it happens that some material circumstance or fact necessary to be made known to the Court is either not stated in the pleadings, or so imperfectly ascertained by them, that the Court, by reason of that defect, is unable to determine finally between the parties,” &c. And, having now disposed of the subject in this view, I will proceed briefly to examine the point in issue in reference to some of the numerous adjudged cases that have been cited. The mortgage cases cited have very little bearing upon the question, but, so far as they bear at all, they decidedly support the view I take of the character of the decree before me, in showing that nothing short of a view of the whole merits will do as a basis for a final decree against the defendant. In the cases of Fairfax vs. Mure ex., 2 Hen. & Mun. 558. Ellzey vs. Lane’s ex., ib. 589, and Allen vs. Belches et al., 595, all decided by the Court of Appeals of Virginia, in the year 1808, the Court held that a decree to foreclose a mortgage and appointing commissioner to make the sale, does not become a final decree until after the report of the commissioner and its affirmance. After that time a statute was passed authorizing appeals in the discretion of the High Court of Chancery from interlocutory decrees, and, under this provision of the statute, appeals are granted in cases of mortgages and other decrees for the sale of property, but the doctrine as to the finality of such decrees, as laid down in the cases I have just mentioned, has never been shaken in that State. Judge Maeshall, however, seems to have held otherwise in Ray vs. Law, 3 Cranch 179, but assigns no reasons.' Afterwards, when the question arose again in the Supreme Court of the United States, in Whiting et al. vs. The Bank of the United States, 13 Peters 15, Judge Story sustained the doctrine of Ray vs. Law, putting it, however, upon the ground that such a decree was final upon the merits of the controversy between the parties, and that unless an appeal would lay as soon as such a decree was pronounced, irreparable mischief might ensue, because the sale would extinguish the title to the land sold, notwithstanding the decree might be subsequehtly reversed. And the other . cases cited from New York and Kentucky but follow the decisions of the Federal Courts. The principle of these decisions, however, is, that the decree having been upon the whole merits of the controversy between the parties, the sale by the commissioner is purely the execution of the decree, and this is doubtless correct. The partition cases have a more direct bearing. That of Young vs. Skipwith, 2 Wash. 383. Gudgell & Austin vs. Mead et al., 8 Misso. 53. Putnam ex. vs. Lewis & wife, 1 Florida 455, all hold that a decree that partition be made ascertaining the respective interest of the parties, and appointing a commissioner or surveyor to make the partition according to the decree, and make report at the succeeding term, is not a final but an interlocutory decree. And the case of Talbot vs. Todd, 7 J. J. Marsh. 456, where there was a further direction to the commissioner to “ assign to Talbot the lower and Todd the upper end of the tract of land,” does not, in the least, conflict with these three cases, because by specification'that Talbot should have the lower end of the tract, and Todd the upper end, the complainant recovered the remedy he sought, in this severance of the joint interest, and the act of partition was but the execution of the decree like the sale in the mortgage cases. When,' however, as in the other three cases, the’ decree did not go thus far, but stopped at the partition, there was something remaining to be done in designating and decreeing to the parties their several estates; and as this remained to be done, and the cause and the parties were continued in Court until the return of the commissioner, which would bring in the facts necessary to base this further decree, such decrees of partition were interlocutory and not final — -being thus strongly analogous to the case at bar where the decree stopped short at the admeasurement of dower, and did not go on further and decree the dower thus admeasured to the widow in severalty. The case Bumbass et al. vs. Webb, 4 Porter 65, in so far as this, has some bearing, that is to say, that in that case, after disposing of the main principles of the bill, the Court directed an inquiry into the value of rents and profits, and directed a report to be made at the subsequent term. The Supreme Court held that decree to be interlocutory, because, like the case at bar, something was left in the cause to be done by the chancellor between the parties in the Court. The case of Johnson et al. vs. Everett et al., 9 Paige, presents very clearly the general grounds upon which the decree at bar should be held to be interlocutory only. It seems to me to be unnecessary to discuss the docti’ines of the Chancery Courts touching reservations in a decree, as, in my opinion, these doctrines are not involved in the case at bar. A reservation might certainly hold a decree as interlocutory which, without it, would be final, but it seems to me that the want of a reservation could never make a decree final which from being made upon only a part of the merits of the case was for that reason in its nature interlocutory •, in other words, a reservation, if touching the decree itself, might hold what would otherwise be a full-grown final decree in abeyance as an interlocutory one, but the want of it can never make a half-grown decree loom forth into maturity. I agree with the Chief Justice in opinion that the application for a Mandamus should be refused.